IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

ABRAHAM LINCOLN MEMORIAL HOSPITAL;                    )
BLESSING HOSPITAL; BLESSINGCARE                       )
CORPORATION, INC., d/b/a ILLINI COMMUNITY             )
HOSPITAL; COMMUNITY MEDICAL CENTER OF                 )
WESTERN ILLINOIS, INC.; COMMUNITY                     )
MEMORIAL HOSPITAL;  GIBSON  COMMUNITY                 )
HOSPITAL, d/b/a GIBSON AREA HOSPITAL AND              )
HEALTH SERVICES; HARDIN COUNTY GENERAL                )
HOSPITAL, INC.; HILLSBORO AREA HOSPITAL,              )
INC.; HOOPESTON COMMUNITY MEMORIAL                    )
HOSPITAL; HOSPITAL & MEDICAL FOUNDATION               )
OF PARIS, INC., d/b/a PARIS COMMUNITY                 )
HOSPITAL; KEWANEE HOSPITAL; MEMORIAL                  )
HOSPITAL ASSOCIATION, INC.; MEMORIAL                  )
MEDICAL CENTER; MENDOTA COMMUNITY                     )
HOSPITAL; PANA COMMUNITY HOSPITAL                     )
ASSOCIATION; PASSAVANT MEMORIAL AREA                  )
HOSPITAL ASSOCIATION; RICHLAND MEMORIAL               )
HOSPITAL, INC.; SARAH BUSH LINCOLN HEALTH             )
CENTER; SHELBY MEMORIAL HOSPITAL                      )
ASSOCIATION, INC.; SOUTHERN ILLINOIS                  )
HOSPITAL SERVICES, d/b/a FERRELL HOSPITAL;            )
SOUTHERN ILLINOIS HOSPITAL SERVICES, d/b/a            )
HERRIN HOSPITAL; SOUTHERN ILLINOIS                    )
HOSPITAL SERVICES, d/b/a SAINT JOSEPH                 )
MEMORIAL HOSPITAL; ST. JOSEPH HOSPITAL                )
OF THE HOSPITAL SISTERS OF THE THIRD                  )
ORDER OF ST. FRANCIS; TAYLORVILLE                     )
MEMORIAL HOSPITAL; THE METHODIST                      )
MEDICAL CENTER OF ILLINOIS; and VALLEY                )
WEST COMMUNITY HOSPITAL,                              )
                                                      )

|                                              |     |                |
| -------------------------------------------- | --- | -------------- |
| Plaintiffs,                                  | )   |                |
|                                              | )   |                |
| v.                                           | )   | No.  10-3122   |
|                                              | )   |                |
| KATHLEEN SEBELIUS, in her official capacity as | ) |              |
| SECRETARY OF THE UNITED STATES               | )   |                |
| DEPARTMENT OF HEALTH AND HUMAN               | )   |                |
| SERVICES,                                    | )   |                |
|                                              | )   |                |
| Defendant.                                   | )   |                |

## OPINION

SUE E. MYERSCOUGH, United States District Judge.

Plaintiff Hospitals seek judicial review of the Secretary of Health and Human Services' (Secretary) final decision reversing a decision of the Provider Reimbursement Review Board (Board).  The Hospitals and the Secretary each moves for summary judgment.  For the reasons set forth below, the Court grants the Secretary's Motion and denies the Hospitals' motion.

## I. INTRODUCTION

The Plaintiffs, who consist of 26 Illinois hospitals (Hospitals), challenge the final administrative decision of the Secretary.  In a ruling that stands as the final decision of the Secretary, the Administrator of the

Centers for Medicare & Medicaid Services (Administrator) upheld

Medicare disallowances of the expenses claimed by the Hospitals.

Although the Administrator's decision stands as the final decision of the

Secretary, this Court will continue to refer to the decision as the

Administrator's decision for purposes of clarity. The Administrator

found that the amount of the Tax Assessment[1] paid by the Hospitals

pursuant to state statute was an allowable cost under the Medicare

program but was subject to offset by the payments the Hospitals received

from the fund created by the tax .

## A.    Overview of the Medicare Program

"The Medicare program is a federally-subsidized health insurance

program primarily for elderly and disabled individuals." Michael Reese

Hosp. and Medical Center v. Thompson, 427 F.3d 436, 438 (7th Cir.

2005). The Centers for Medicare & Medicaid Services (CMS) is charged

---

[1] The type of tax at issue here is referred to by the parties and applicable regulations as a "provider tax," "hospital tax assessment," and "health care provider tax." This Court will use the term "Tax Assessment" when referring to the tax claimed by the Hospitals on the cost report.

with administering the Medicare program.  <u>Select Specialty Hosp. of</u>

<u>Atlanta v. Thompson</u>, 292 F.Supp.2d 57, 61 (D.D.C. 2003).

CMS contracts with insurance companies–called fiscal

intermediaries–"to process claims made on behalf of Medicare

beneficiaries."  <u>See</u> <u>Doctors Nursing & Rehabilitation Center, LLC v.</u>

<u>Sebelius</u>, 2010 WL 4878832 (C.D. Ill. 2010).  A hospital submits an

annual hospital cost report at the end of the hospital's fiscal year stating

the amount of Medicare reimbursement the hospital believes is due.  <u>See</u>

<u>United States v. Rogan</u>, 2002 WL 31433390, at *2 (N.D. Ill. 2002); <u>see</u>

<u>also</u> 42 C.F.R. § 413.20 (regulation pertaining to cost reports).  Those

cost reports are reviewed by the fiscal intermediary, who then determines

the amount of reimbursement due the provider and issues the provider a

Notice of Program Reimbursement.  <u>See</u> 42 C.F.R. § 405.1803.   A

provider may challenge the fiscal intermediary's determination by

requesting a hearing before the Board.  <u>See</u> 42 U.S.C. § 1395oo(a); 42

C.F.R. § 405.1835.

## B.    The Hospitals' Medicare Cost Reports

During the period at issue here, fiscal years 2005 and 2006, the Hospitals sought reimbursement for services provided to patients covered by the Medicare program on a "reasonable cost" basis.  See 42 U.S.C. § 1395f(b)(1) (providers may be reimbursed for the lower of the reasonable cost of services or the customary charges with respect to such services). The Hospitals included in their cost reports the Tax Assessment they paid pursuant to Illinois statute,  discussed in more detail below.

The fiscal intermediary–AdminaStar Federal and its successor, National Government Services (collectively, the Intermediary)– disallowed the Tax Assessment payments as costs and made audit adjustments which affected the amount of Medicare reimbursement that each Hospital was due.  According to the Hospitals, the disallowance lowered Medicare payments to the Hospitals in the aggregate amount of $4,195,424.  The Secretary claims the amount at issue is $3,963,655. The Administrator did not make any specific finding about the amount at issue, and the exact amount is not relevant to this Court's review of

the Administrator's decision.

## C.    Medicaid and the State Health Care Provider Tax

Before discussing the Tax Assessment claimed as an expense by the
Hospitals on their cost reports, a brief explanation of the Medicaid
program is necessary to put the issue in context.  "Medicaid is a
cooperative federal-state program that provides federal funding for state
medical services to the poor."  Frew ex rel. Frew v. Hawkins, 540 U.S.
431, 433 (2004).   A state's Medicaid program is set forth in a State
Plan, which must be approved by CMS before the State Plan may be
implemented.  42 U.S.C. §1396a.  A state must also submit for approval
any proposed amendments to the State Plan.  See 42 C.F.R. §430.12(c);
American Society of Consultant Pharmacists v. Garner, 180 F.Supp.2d
953, 958 (N.D. Ill. 2001).   If the state establishes a Medicaid plan that
meets federal requirements, the federal government reimburses a state's
medical assistance costs by paying a Federal Medical Assistance
Percentage.  See 42 U.S.C. § 1396b(a)(1); Harris v. McRae, 448 U.S.
297, 308 (1980); Arkansas Dept. of Health and Human Services v.

<u>Ahlborn</u>, 547 U.S. 268, 275 (2006) (noting that the federal government pays between 50% and 83% of the costs the State incurs for patient care).   CMS is also charged with administering the Medicaid program. <u>Moore ex rel. Moore v. Reese</u>, 637 F.3d 1220, 1235 (11th Cir. 2011).

In 2004, the Illinois Department of Public Aid  (IDPA) filed two Amendments to Illinois' State Plans: one establishing new inpatient adjustments; and one establishing new outpatient adjustments.  The Amendments were necessary because Illinois enacted legislation that authorized a Hospital Provider Assessment Program (305 ILCS 5/5A-1, <u>et</u> <u>seq.</u>).

Essentially, the statute imposed a health care related tax on providers to raise revenue for the Medicaid program which would in turn increase the matching funds received from the federal government. Pursuant to 42 U.S.C. § 1396b(w), revenue a state receives from a health care related tax will be eligible for the Federal Medical Assistance Percentage if the tax is broadly based, uniformly imposed, and is not, in effect, a hold harmless provision.  <u>See</u> 42 U.S.C. § 1396b(w)(1)(A)(ii),

(iii); 42 U.S.C. § 1396b(w)(3)(B); 42 U.S.C. § 1396b(w)(4).   A health care related tax is a hold harmless provision  if: (1) it provides for payment to the taxpayer that is tied to the amount of the health care related tax paid; (2) the Medicaid payments the taxpayer received are tied to the total health care related tax paid; or (3) the state promises to hold the taxpayer harmless for a portion of the tax through a direct payment or an exemption from the tax.  <u>Protestant Memorial Medical Center, Inc. v. Maram</u>, 471 F.3d 724, 727 (7th Cir. 2006), citing 42 U.S.C. § 1396b(w)(4).

CMS approved the State Plan Amendments after: (1) granting IDPA a waiver of the broad-based requirement and (2) requiring IDPA remove language from the State Plan Amendment that conditioned the State's increased Medicaid payments to hospitals on CMS's waiver of the broad-based requirement.  The Hospitals and the Intermediary stipulated at the hearing before the Board that CMS approved the State Plan Amendments for federal matching and determined the health care provider tax was not a hold harmless agreement.

As a result of the approval of the State Plan Amendments, the Hospitals received additional Medicaid payments from the Fund created by the tax assessment. Those additional Medicaid payments were included when the federal government calculated the Federal Medical Assistance Percentage. This Court will hereinafter refer to the additional Medicaid payments the Hospitals received from the Fund as the "Fund Payments."

The record contains evidence that most hospitals received more in Fund Payments than they paid in taxes and some hospitals received less. Some hospitals received Fund Payments even though the hospital was exempt from paying the tax.

## D.    The Illinois Statute Imposing the Health Care Related Tax

The Illinois statute imposed an annual health care related tax (the statute calls it an "assessment") on inpatient services on each hospital provider–except for certain categories of exempt hospitals– "in an amount equal to the hospital's occupied bed days multiplied by $84.19 for State fiscal years 2004 and 2005." 305 ILCS 5/5A-2(a) (West 2004). A

hospital provider who failed to pay the tax when due was subject to a penalty.  305 ILCS 5/5A-4(c) (West 2004).

The funds received from the tax were put in a Hospital Provider Fund (Fund).   305 ILCS 5/5A-6 (West 2004).  In addition to funds received from the tax the Fund contained: (1) all federal matching funds received by IDPA as a result of expenditures made by IDPA that were attributable to money deposited in the Fund; (2) interest and penalties levied in conjunction with the statue; (3) money transferred from another fund in the State treasury; and (4) money received for the Fund from any other source, such as interest earned.  305 ILCS 5/5A-8(c) (West 2004).

IDPA was required to make Hospital Access Improvement Payments with money from the Fund.  305 ILCS 5/5A-12 (West 2004) ("To improve access to hospitals services,  . . . [IDPA] shall make payments to hospitals as set forth in this Section").  These Hospital Access Improvement Payments were additional Medicaid payments.  See, e.g., Protestant Memorial, 471 F.3d at 727 (noting that the payments under Section 5A-12 were "payments to the hospitals above the basic

rate of inpatient hospital services, including a 'Medicaid inpatient utilization rate adjustment'").  In addition to the Hospital Access Improvement Payments, the statute permitted IDPA to disburse money from the Fund for eight different reasons, including making payments under the Children's Health Insurance Program Act and paying administrative expenses by the IDPA in performing activities authorized by the statute.  305 ILCS 5/5A-8(b) (West 2004).

The Hospitals' tax liability was contingent on several factors, including actual receipt of the Fund Payments, CMS's approval of the Fund Payments, and waiver of the broad-based requirement.  <u>See</u> 305 ILCS 5/5A-4(a) (the payment of the tax shall not be due until after "the hospital has received the payments required under Section 5A-12"); 305 ILCS 5/5A-10 (West 2004).

E.    Procedural History of this Case

The Intermediary disallowed the Tax Assessment as a cost and made audit adjustments which affected the amount of Medicare reimbursement each Hospital was due or owed for the cost reporting

period.  The Hospitals appealed the Intermediary's decision to the Board.
The Board consolidated the appeals into one group appeal.

Following a hearing, the Board ruled that the Tax Assessment was
an allowable cost and that the Fund Payments did not constitute a
refund.   In February 2010, the Intermediary requested review by the
CMS Administrator, asserting the Hospitals' Tax Assessment costs
should reflect the amount refunded in the form of Fund Payments.

The Administrator then reversed the Board, finding that the Tax
Assessment was an allowable cost that must be offset by the Fund
Payments received.

## II.  JURISDICTION AND VENUE

Judicial review of the Administrator's decision is provided by 42
U.S.C. § 1395oo(f)(1).   Venue is proper because the greatest number of
providers are located in this district.  42 U.S.C. 1395oo (f)(1) ("in an
action brought jointly by several providers, [venue is proper in] the
judicial district in which the greatest number of providers are located");
see also 28 U.S.C. 1391(e) (addressing venue when the defendant is an

officer or employee of a United States agency acting in his or her official capacity).

### III.  STANDARD FOR SUMMARY JUDGMENT AND JUDICIAL REVIEW OF THE ADMINISTRATOR'S DECISION

The parties have filed cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  A court may grant summary judgment only if the "pleadings, the discovery, and discovery materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c); see also, Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Cross-motions for summary judgment "provide an appropriate procedural vehicle for deciding the legal significance of the evidence set forth in the administrative record and for evaluating the administrative decision."   Southern Indiana Rehabilitation Hosp. v. Thompson, 2004 WL 784351, at *1 (S.D. Ind. 2004).

This Court reviews the Administrator's decision in accordance with the Administrative Procedure Act (APA) (5 U.S.C. §701 et seq.).  42

U.S.C. § 1395oo(f)(1) (referencing 5 U.S.C., Chapter 7); <u>see</u> <u>also</u>

<u>Thomas Jefferson University v. Shalala</u>, 512 U.S. 504, 512 (1994).

Under the APA, agency action, findings, and conclusions may be found

unlawful and set aside where such actions, findings, or conclusions are

"arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law" or not supported by substantial evidence.  5 U.S.C.

§706(2).

When reviewing an agency's interpretation of a statute it

administers, a court first determines "whether Congress has directly

spoken to the precise question at issue."  <u>Chevron, U.S.A., Inc. v. Natural</u>

<u>Resources Defense Council, Inc.</u>, 467 U.S. 837, 842 (1984).  If so, the

agency and the court must give effect to Congress' expressed intent.  <u>Id.</u>

at 842-43.  If the statute is silent or ambiguous, the court examines

whether the agency's interpretation was based on a permissible

construction of the statute.  <u>Id.</u> at 843.

Generally, the Secretary's interpretation of the Medicare

regulations is entitled to considerable deference.  <u>See</u> <u>Loyola University</u>

of Chicago v. Brown, 905 F.2d 1061, 1067 (7th Cir. 1990); see also St. Francis, 714 F.2d at 874. /Adventist Living Centers, Inc. v. Bowen, 881 F.2d 1417, 1420 -21 (7th Cir. 1989) (deference afforded to the Secretary is not lessened by the fact that the Board reached a different conclusion). However, the Secretary's interpretation of "reasonable cost" is entitled to a lesser degree of deference because the Medicare statute specifically circumscribes the Secretary's discretion to define "reasonable cost". Little Co. of Mary Hosp. v. Sebelius, 587 F.3d 849, 853 (7th Cir. 2009); see also Bowen, 905 F.2d at 1067 (noting the reason for the lesser degree of deference is because the statute requires that the regulations take into account direct and indirect costs and must avoid cost shifting).

## IV.  ANALYSIS

The Hospitals argue: (1) the Administrator's decision that the Fund Payments constituted refunds of the Tax Assessment was contrary to law, arbitrary, capricious, and not supported by substantial evidence; (2) the Administrator's decision must be set aside because it establishes a new rule issued without notice and comment and cannot be retroactively

applied; and (3) the Administrator's decision violates the cost-shifting

provisions of the Medicare statute.

## A.     Administrator's Decision Was Not Arbitrary, Capricious, or Contrary to Law, and Is Supported by Substantial Evidence

The Medicare program reimburses hospitals for the "reasonable

cost" of medical services.  42 U.S.C. § 1395f(b)(1).   The statute defines

reasonable costs as:

> the cost actually incurred, excluding therefrom any
> part of incurred cost found to be unnecessary in
> the efficient delivery of needed health services, and
> shall be determined in accordance with regulations
> establishing the method or methods to be used[.]

42 U.S. C. § 1395x(v)(1)(A).

The Secretary is authorized to promulgate regulations "establishing

the method or methods to be used" for determining reasonable costs.  42

U.S.C. § 1395x(v)(1)(A).  The regulations must take into account both

direct and indirect costs so that, under the methods of determining costs,

the costs of providing services to persons covered by Medicare is not

borne by persons not covered under Medicare, and the costs of providing

services to persons not covered under Medicare is not borne by persons

covered under Medicare.  42 U.S.C. § 1395x(v)(1)(A).

"The reimbursed costs should be actual costs, but the statute gives the Secretary wide latitude in developing methods of determining costs." St. Mary's Hospital Medical Center v. Heckler, 753 F.2d 1362, 1366 (7th Cir. 1985), citing 42 U.S.C. §1395x(v)(1)(A).  "Congress specifically left a gap in the statute and gave the Secretary the authority to establish the regulations which define 'reasonable costs' and which prevent Medicare costs from being shifted to the provider hospitals."  Shalala v. St. Paul-Ramsey Medical Center, 50 F.3d 522, 524 (8th Cir. 1995), citing 42 U.S.C. §1395x(v)(1)(A).

1.    The Relevant Regulations

The Secretary has promulgated regulations "establishing the methods for determining reasonable cost reimbursement."  Shalala v. Guernsey Memorial Hosp., 514 U.S. 87, 91 (1995).  The regulations relevant to the time at question here define "reasonable cost" as including all "necessary and proper costs incurred in furnishing the services, subject to principles relating to specific items of revenue and cost."  42 C.F.R. §

413.9(a).   This includes administrative costs.  <u>See</u>  42 C.F.R. §

413.9(c)(3).   The Provider Reimbursement Manual[2] (Manual), provides

that, as a general rule, taxes assessed against a provider are allowable

costs.  <u>Manual</u>, § 2122.  The Manual contains a list of taxes not allowable

as costs, and health care provider taxes are not listed therein.  <u>Manual</u>,  §

2122.2.

The regulations also provide for adjustments to allowed costs.

Specifically, Section 413.98 of the regulations provides that discounts,

allowances, and refunds of various expenses are reductions of the costs to

which they relate.  42 C.F.R. § 413.98(a).   Refunds are "amounts paid

back or a credit allowed on account of an overcollection."  42 C.F.R. §

413.98(b)(3).   In addition, "refunds of previous expense payments are

clearly reductions in costs and must be reflected in the determination of

allowable cost."  42 C.F.R. § 413.98(d)(2).

The Manual also provides that "refunds of previous expense

_____

[2] The Manual is "an extensive set of informal interpretive guidelines
and policies published to assist intermediaries and providers in applying
the reasonable cost reimbursement principles." <u>Providence Hospital of
Toppenish v. Shalala</u>, 52 F.3d 213, 218 (9th Cir. 1995).

payments are reductions of the related expense."  <u>Manual</u>, § 800.

Discounts, allowances, refunds, and rebates are not considered a form of

income but should be used to reduce the specific costs to which they

apply.  <u>Manual</u>,  § 804.  Finally, Section 2302.5 of the Manual defines

"Applicable Credits" that offset or reduce expense items listed on the cost

report as follows:

> Those receipts or types of transactions which
> offset or reduce expense items that are allocable to
> cost centers as direct or indirect costs.  Typical
> examples of such transactions are: purchase
> discounts, rebates or allowances; recoveries or
> indemnities on losses; sales of scrap or incidental
> services; adjustments of overpayments or
> erroneous charges; and other income items which
> serve to reduce costs.

<u>Manual</u>, § 2302.5

2.    <u>The Administrator's Decision</u>

After considering the law, regulations, policy guidelines, and

evidence in the record, the Administrator found the Tax Assessment was

an allowable cost, but that cost had to be offset by the Fund Payments

received by the Hospitals.  That is, the "allowable tax is properly

calculated as being the amount of the State imposed tax less the amount refunded by the State of Illinois in the form of the hospital access improvement payments."

Specifically, the Administrator found the Tax Assessment and Fund Payment "inextricably linked," as evidenced by: (1) the language in the state statute containing the Hospitals' conditional obligation to pay the Tax Assessment tax contingent on CMS's approval of the tax arrangement for Federal Medicaid matching funds; and (2) the timing of the Tax Assessment and Fund Payments--the Tax Assessment payments were not due until the Fund Payments were received. The Administrator found that, but for the Tax Assessment, there would have been no Fund Payment, and, without the Fund Payment, there would have been no Tax Assessment. Finally, the Administrator noted that if the State had not benefitted from the increased Federal funding, neither the tax nor the Fund would have been established.

The Administrator also found that regardless of how the Fund Payment was characterized, the Fund Payment must be used to offset the

Tax Assessment under Medicare reasonable cost rules.  The reasonable cost rules in the statute and the regulations required providers be reimbursed the reasonable costs of those services, which are defined as the costs actually incurred.  The Administrator found the cost actually incurred by the Hospitals was the Tax Assessment expense offset by the Fund Payment.

The Administrator found such conclusion was analogous to and supported by the regulations relating to refunds.   Because almost all of the participating hospitals received a Fund Payment greater than the Tax Assessment, the Administrator found it was only reasonable that the "refund" be used to reduce the allowable expenses for Medicare cost reimbursement purposes.   The Administrator specifically held that "[t]he reduction of the [T]ax [A]ssessment by the redistribution/refund received most accurately captures the costs actually 'incurred' for purposes of Medicare reimbursement."

The Administrator found it was immaterial that the tax itself met the required Medicaid "hold harmless" provision.  <u>See</u> 42 U.S.C. §

1396b(w)(4) (a health care related tax is a hold harmless provision if a payment to the taxpayer–Medicaid or otherwise–is tied to the amount of the tax paid by the taxpayer or if the state promises to hold the taxpayer harmless for a portion of the tax through a direct payment or exemption from the tax).   According to the Administrator, "the Medicaid determination regarding the validity of State's hospital tax program for purposes of Federal contributions, is not controlling over the Medicare program's determination of reasonable and necessary tax expense for purposes of payment under Medicare."  The Administrator found the "guiding principle" in this case was the reasonable cost rule in the statute and the regulations and was not controlled by the Medicaid hold harmless provision.

3.      Administrator's Decision Was Not Arbitrary, Capricious, or Contrary to Law, and Is Supported by Substantial Evidence

The Hospitals assert the Administrator's decision was arbitrary, capricious, and not supported by substantial evidence.  The Hospitals argue the Fund Payment and Tax Assessment were not linked and the Fund Payment did not constitute a refund of the Tax Assessment.  The

Hospitals further assert that, in approving the State Plan Amendments, CMS determined that the Hospitals' tax expenses were not refunded by the Medicaid payments. Finally, the Hospitals claim the Administrator's decision ignores CMS's established policy of recognizing such Tax Assessments as allowable expenses without offsetting the Medicaid payments.

Reasonable costs, as that term is used in the statute, means the costs actually incurred. See 42 U. S. C. § 1395x(v)(1)(A). The Administrator's conclusion that the amount of the Tax Assessment actually incurred was the amount paid, minus the Fund Payment received, is supported by substantial evidence.

The statute evidenced the link between the Tax Assessment and the Fund Payment. The statute specifically provided that the Tax Assessment was not due until the Fund Payment was made. 305 ILCS 5/5A-4(a)(ii) (West 2004). Moreover, the Hospitals did not pay the Tax Assessment until they had received the Fund Payments. This evidence supports the Administrator's conclusion that the Hospitals did not

actually incur the full Tax Assessment amount.

The Hospitals argue that the Administrator improperly determined that the Fund Payment was a "refund" of the Tax Assessment. The Hospitals argue the plain language of section 412.98(b)(3), which defines "refund" as "amounts paid back or a credit allowed on account of overcollection," dictates that a refund occurs only when a payment is made to correct an overcollection.

The Administrator's apparent decision that a "refund" is an "amount paid back" <u>or</u> a "credit allowed on account of overcollection" is a permissible construction of the regulation. <u>See</u>, <u>e.g.</u>, <u>Sta-Home</u>, 34 F.3d at 309 (rejecting a reading of section 413.98(b)(9) as requiring that a refund be an amount paid back on account of overcollection, noting that if that were the correct reading, "<u>any</u> amount that is paid out by Sta-Home as a reimbursable expense and then is returned by the payee for any reason other than 'on account of an overcollection', is not subject to offset")(emphasis in original). Substantial evidence supports the conclusion that the Fund Payments were an "amount paid back" on the

Tax Assessment.

In any event, the Administrator also held that regardless of the characterization of the payment–meaning, regardless of whether it was technically a "refund"– the Tax Assessment must be offset by the Fund Payment because the statute and regulations require that providers only be reimbursed for costs "actually incurred."  See Sta-Home, 34 F.3d at 310 (reimbursement is allowed only for 'cost[s] actually incurred'").  Here, the Administrator's interpretation is in keeping with the statutory directive.

In that regard, the case is distinguishable from the case cited by the Hospitals,  Loyola University of Chicago v. Bowen, 905 F.2d 1061.  In Loyola, the Seventh Circuit found that the Secretary's decision to offset a University's claim for reimbursement of clinical medical education costs by an amount equal to funds allocated to the Research and Education account was not supported by substantial evidence.  Id. at 1070 (the faculty-physicians' contract with a faculty practice plan provided that a portion of patient-care fees over a certain earning ceiling would be

allocated to a Research and Education account of the medical school department to which the faculty-physician belonged). The Secretary had recharacterized a payment made pursuant to the faculty-physicians' employment contract as a "donation," in which case the "donation" would reduce the reimbursement expense. Id. at 1064, citing 42 C.F.R. §405.421(g)(1) (providing that costs of approved medical educational activities, including faculty salaries attributable to clinical education, are offset by revenues received from "tuition and grants and donations that a donor has designated for the activities"). The evidence did not support a finding that the faculty-physicians assigned future income to the university or that the funds were designated for payment of specific operating costs of the hospital. Loyola, 905 F.2d 1069.

In contrast here, the record supports the Administrator's decision that Fund Payments constituted an offset of the Tax Assessments incurred by the Hospitals. First, the full Tax Assessment was not an incurred cost. Under the terms of the statute, the Hospitals did not have to pay the tax until the Hospitals received the Fund Payments. See 305

ILCS 5/5A-4(a) (the payment of the tax shall not be due until after "the hospital has received the payments required under Section 5A-12"); 305 ILCS 5/5A-10 (West 2004).

Further, this Court rejects the Hospital's implicit argument that because no regulation specifically addresses the situation involved here, the Administrator could not find that the Tax Assessment expense had to be offset by the Fund Payment received. No basis exists "for suggesting that the Secretary has a statutory duty to promulgate regulations that, either by default rule or by specification, address every conceivable question in the process of determining equitable reimbursement." Shalala v. Guernsey Memorial Hospital, 514 U.S. 87, 96 (1995).

The Hospitals also argue that by approving the State Plan Amendments, CMS determined that the tax did not constitute a hold harmless agreement. The Hospitals argue this shows CMS has already determined that the Tax Assessment payments were not refunded by the Fund Payments.

However, Medicaid and Medicare are different programs governed

by different rules.  See, e.g., Florida v. Association of Rehabilitation Facilities v. Florida, 225 F.3d 1208, 1211 (11th Cir. 2000).   The finding that the tax was a permissible tax for purposes of matching federal funds under Medicaid is not dispositive of whether those same taxes are actually incurred and are "reasonable costs" under the Medicare statute. See, e.g., Community Health Center v. Wilson-Coker, 311 F.3d 132, 137 (2nd Cir. 2002) ("It does not follow, however, that the Secretary's definition of 'reasonable' or 'reasonably related' under Medicare necessarily also defines those terms for Medicaid purposes").

The Hospitals also argue the Administrator's decision is arbitrary and capricious because it ignores CMS's established policy of recognizing health care provider taxes as allowable expenses without offsetting Medicaid payments.  See, e.g., pre-Fab Transit Co. v. United States, 595 F.2d 384, 387 (7th Cir. 1979) (agencies must explain "departures from agency norms").  As evidence of the alleged prior position on the issue, the Hospitals cited in their initial brief to five Board decisions, one CMS decision (Kindred Hosp. v. Wisconsin Physician Services, 2009 WL

6049415), and an Office of Inspector General report regarding the Missouri provider tax program.

In the Hospital's responsive brief, however, the Hospitals state "while it is true that the prior manual provisions and administrative determinations (with the exception of <u>Kindred</u>) do not directly address the precise issue of whether a tax on hospitals paid to a State must be offset by the amount of Medicaid payments made to the hospitals, that is solely because CMS heretofore has never contested this matter." This Court concludes those prior administrative determinations– including <u>Kindred</u>– do not address the precise issue raised here.

In <u>Kindred</u>, the Administrator concluded that payments hospitals received from a voluntary pooling arrangement had to be offset against the hospitals' allowable tax expense. <u>Kindred</u>, 2009 WL 6049415, at *9. That decision did not address whether the Medicaid revenues the hospitals received from the State had to be offset against the allowable tax expense.

The Hospitals essentially argue that implicit in the <u>Kindred</u>

decision is the finding that the actual Medicaid revenues received directly from the State cannot be considered an offset or reduction or refund of provider taxes.  However, this Court cannot infer the existence of a contrary policy based on the Administrator's silence.  <u>See</u>, <u>e.g.</u>, <u>Thomas Jefferson University</u>, 512 U.S. at 516 (rejecting the petitioner's attempt to infer from silence in an intermediary letter a contrary policy, noting "the mere failure to address [the issue] here hardly establishes an inconsistent policy").

Because the previous cases did not address the precise issue that was before the Administrator in this case, the Administrator's decision here was not inconsistent.  As such, the Administrator was not required to explain the departure from previous interpretations.  <u>See Indiana Coal Council Inc. v. Babbit</u>, 2000 WL 1469452, at *7 (S.D. Ind. 2000) (administrative agencies are not bound by the doctrine of <u>stare</u> <u>decisis</u> and a court will not reverse an agency's determination because it may be inconsistent with prior decisions, but the agency must explain its departure from established precedent).

**B.** **Administrator's Decision Did Not Constitute a New Rule that Required Notice and Comment Procedures**

The Hospitals next argue that the Administrator's decision must be set aside because it establishes a new rule that fails to comply with the APA and the Medicare statute. The Hospitals also argue that the decision is impermissibly retroactive.

1. <u>Administrator's Decision Was an Adjudication</u>

An administrative agency must provide the public with notice and the opportunity to comment prior to promulgating substantive changes to a regulation. 5 U.S.C. §552(a)(1)(D) (agency shall publish in the Federal Register substantive rules, statements of general policies, interpretations of general applicability formulated and adopted by the agency); 5 U.S.C. §552(a)(1)(E) (agency shall publish in the Federal Register amendments, revisions or repeals of substantive rules general policy, and interpretations of general applicability); 5 U.S.C. §553(b) (requiring notice of proposed rulemaking). The Hospitals argue the Administrator's decision constitutes a modification of the regulation defining "refunds of expenses" and, therefore, was required to comply

with the rulemaking provisions of the APA.

This Court finds, however, that the Administrator's decision qualifies as an adjudication under the APA.  See 5 U.S.C. § 554 (an adjudication is a "decision required by statute to be determined on the record after opportunity for an agency hearing[.]").  Section 1395oo of the Social Security Act (Act) (of which Medicare is a part) requires a hearing where the provider contests the amount of reimbursement due, and the decision "shall be based upon the records made at such hearing." 42 U.S.C. § 1395oo(a), (d).  Therefore, the Administrator's decision is an adjudicative decision, not a rule within the meaning of the APA, and the requirements for rule-making do not apply.   See Shalala v. Guernsey Memorial Hospital,  514 U.S. 87, 96 (1995) ("The APA does not require that all specific applications of a rule evolve by further, more precise rules rather than by adjudication"); see also Negrete-Rodriguez v. Mukasey, 518 F.3d 497, 503 (7th Cir. 2008) ( "[a]n agency is not precluded from announcing new principles in an adjudicative proceeding rather than through notice-and-comment ruling-making").

Moreover, as noted, above, the Administrator's decision did not constitute a departure from a previous position. The conclusion that the Secretary has not changed positions disposes of the Hospitals' argument that the decision was such a departure as to constitute a new rule that requires notice and the opportunity for comment. See Homemakers North Shore, Inc. v. Bowen, 832 F.2d 408, 413 (7th Cir. 1987).

2.    The Act Does Not Impose More Stringent Requirement Than APA

The Hospitals also argue that the Act prescribes a process for Medicare rulemaking and asserts the Administrator's decision violated that rule. Section 1395hh(a)(2) of the Act provides as follows:

> No rule, requirement, or other statement of policy (other than a national coverage determination) that establishes or changes a substantive legal standard governing the scope of benefits, the payment for services, or the eligibility of individuals, entities, or organizations to furnish or receive services or benefits under this title shall take effect unless it is promulgated by the Secretary by regulation under paragraph (I).

42 U.S.C. §1395hh(a)(2); see also 42 U.S.C. § 1395hh(e)(I)(A) (providing that a "substantive change in regulations, manual instructions,

interpretative rules, statements of policy, or guidelines of general applicability" shall not be applied retroactively except under certain circumstances).

The Hospitals argue the Administrator's decision "effects a substantial change in the regulatory definition of 'refunds'" and, therefore, CMS could not adopt the new rule or apply it retroactively unless CMS complied with Section 1395hh.

The courts that have considered this issue have concluded or assumed without deciding that Section1395hh imposes no standards greater than those established by the APA. See Baptist Health v. Thompson,  458 F.3d 768, 776 n. 8  (8th Cir. 2006); Erringer v. Thompson, 371 F.3d 625, 633 (9th Cir. 2004); Monmouth Medical Center v. Thompson, 257 F.3d 807, 814 (D.C. Cir. 2001); Warder v. Shalala, 149 F.3d 73, 79 n. 4 (1st Cir. 1998).  Because rulemaking procedures were not required under the APA, this Court finds rulemaking procedures were not required under Section 1395hh(a)(2) of the Act.

Additionally, the case cited by the Hospitals, Chippewa Dialysis

Services v. Leavitt, 511 F.3d 172 (D.C. Cir. 2007) is distinguishable.  In that case, the providers challenged the Board's use of a "3.0 hour per treatment standard" to its denial of a request for reimbursement at a higher rate because the standard should have been published in the Federal Register.  Chippewa, 511 F.3d at 173.  On judicial review of the Board's decision, the court examined Section 1395hh(c)(1) of the Act. See 42 U.S.C. §1395hh(c)(1), which requires publication in the Federal Register of all manual instructions, interpretive rules, statements of policy, and guidelines of general applicability.  The court held the Secretary should have published the 3.0 hour per treatment standard because it was a guideline of general applicability.  Chippewa, 511 F.3d at 177.  The evidence showed the Secretary had used that standard as the threshold in the past and intended to continue using that standard. Chippewa, 511 F.3d at 177.

Here, the Administrator's decision constituted an interpretation of the relevant regulations, not a specific, numerical test.  Moreover, unlike Chippewa, the record here contains no evidence that the Secretary has

previously addressed this precise issue.  See, e.g., Provena Hospitals v. Sebelius, 662 F.Supp.2d 140, 154 (D.D.C. 2009) (rejecting argument that the Secretary failed to include the program memorandum "in the mandatory list of agency issuances published in the Federal Register" under Section 1395hh(c)(1); the argument was premised on the assertion that the Secretary had previously committed to a different position, and the court rejected that assertion).   Therefore, the Administrator's decision did not violate the Act.

3.    Administrator's Decision Can Apply Retroactively to the Hospitals

The Hospitals further argue the rule announced in the Administrator's decision cannot be retroactively applied.  However, "[w]ithin the context of an agency adjudication, the Secretary generally may lawfully interpret a regulation notwithstanding its retroactive effect." St. Luke's Hosp. v. Sebelius, 611 F.3d 900, 907 (D.C. Cir. 2010). Therefore, the Administrator's decision applies to the Hospitals.

4.    No Basis Exists to Set Aside Administrator's Decision Due to an Alleged Ex-Parte Communication

The Hospitals also argue, in a footnote, that the Administrator's

decision failed to comply with the Secretary's regulation prohibiting <u>ex parte</u> communications.  <u>See</u> 42 C.F.R. §  405.1875(d).  The Hospitals claim the Administrator relied on comments filed by the Center of Medicare Management (CMM), a division of CMS.  The Administrator's decision reflected CMM submitted comments requesting the Board's decision be reversed.

Although the comments filed by CMM contained a certification that a copy was provided to attorneys for the Hospital and Intermediary, the Hospitals provided the affidavit of Carel T. Hedlund, an attorney for the Hospitals, asserting she had not received the comments.  The Hospitals ask that the decision be set aside for noncompliance with the procedures.  5 U.S.C. § 706(2)(D) (providing a reviewing court may set aside agency action found to be "without observance of procedure required by law").

The Medicare regulations provide that a nonparty may communicate with the Administrator concerning a Board decision so long as the following requirements are met: (1) the comments must be in

writing and (2) must contain a certification that copies were served on all parties. 42 C.F.R. §405.1875(d)(1), (2). Those requirements were met here. The comments were in writing and contained a certification that the copies were served on all parties. The Hospitals could have asked the Administrator to reopen and revise the decision, but the Hospitals did not do so. 42 C.F.R. §405.1875(e)(4)(ii). <u>See</u>, <u>e.g.</u>, <u>United States v. L.A. Tucker Truck Lines, Inc.</u>, 344 U.S. 33, 37 (1952) ("orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts).

Finally, even if the CMM comments constituted an improper <u>ex parte</u> communication, improper <u>ex</u> <u>parte</u> communications do not render proceedings automatically void. <u>Professional Air Traffic Controllers Org. v. Federal Labor Relations Auth.</u>, 685 F.2d 547, 564-65 (D.C. Cir. 1982). Relevant considerations include the gravity of the communication, whether the contact influenced the agency's ultimate decision, and whether the contents of the communications were

unknown to opposing parties, who therefore had no opportunity to respond.  <u>Id.</u>

The Hospitals claim the comments from CMM substantially influenced the Administrator's decision because the Administrator reached a different conclusion than had been reached in <u>Kindred</u>.  But, as noted above, <u>Kindred</u> is not inconsistent with the decision here.  Consequently, the alleged <u>ex</u> <u>parte</u> communication could not have influenced the agency's ultimate decision.  Therefore, this Court will not set aside the Administrator's decision on the basis of an alleged <u>ex</u> <u>parte</u> communication.


**C.    Administrator's Decision Does Not Violate the Cost-Shifting Provisions of the Medicare Statute**

The Hospitals' final argument is that the Administrator's decision violates the cost-shifting provisions of the Medicare statute.  The Act prohibits "shifting Medicare costs to non-Medicare patients and vice versa."  <u>St. James Hosp. v. Heckler</u>, 760 F.2d 1460, 1470 (7th Cir. 1985),

citing 42 U.S.C. § 1395x(v)(1)(A). The Hospitals argue that Medicare is not paying "its full share of the provider tax expense," and the Secretary is reducing that expense by the amount of Medicaid payments to the Hospitals.

As this Court noted previously, the Administrator's decision that the Tax Assessment expenses were only "incurred" to the extent the Tax Assessments exceeded the Fund Payments was not arbitrary, capricious, contrary to law, and was supported by substantial evidence. To the extent the Hospitals received Fund Payments, the Hospitals did not incur an expense. As such, charging the Medicare program for tax costs the Hospitals have not incurred would be improper. The Administrator's decision did not constitute improper cost shifting.

## V. CONCLUSION

For the reasons stated, Plaintiffs' Motion for Summary Judgment (d/e 14) is DENIED and Defendant's Motion for Summary Judgment (d/e 16) is GRANTED. CASE CLOSED.

ENTERED: June 7, 2011

FOR THE COURT:

_____
s/ Sue E. Myerscough

SUE E. MYERSCOUGH
UNITED STATE DISTRICT JUDGE